**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0688-24

ERIN M. COOK,

      Plaintiff-Respondent,

v.

SHAWN THOMPSON,

      Defendant-Appellant.

_____

          Submitted December 10, 2025 – Decided March 25, 2026

          Before Judges Paganelli and Jacobs.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FM-07-2186-16.

          Shawn Thompson, self-represented appellant.

          Marianne Zembryski LLC, attorneys for respondent (Marianne Zembryski, on the brief).

PER CURIAM

Defendant Shawn Thompson appeals from a September 27, 2024 post-judgment order denying his motion to alter the method of transporting the child for parenting time, to award make-up parenting time, and to resolve other parenting-related issues in his favor. We affirm.

I.

The parties married in June 2007 and separated in December 2013. They divorced in December 2016. A Matrimonial Settlement Agreement (MSA) provided for joint legal custody of their child, born in 2011.[1] It established a fifty-fifty parenting schedule, with plaintiff designated the parent of primary residence (PPR).

In the summer of 2018, plaintiff relocated from Nutley to Springfield. Defendant opposed relocation and moved for emergent relief. In a July 11, 2018 order, he was designated PPR "solely for the purpose of taking steps necessary to enroll the child for the upcoming school year in the same public school in Nutley . . . that the child attended for the most recently completed school year." Defendant's effort to enroll the child in the Nutley school system proved unsuccessful. Accordingly, an August 29, 2018 order vacated defendant's PPR

---

[1] Pursuant to Rule 1:38-3(d)(1), we reference "the child" throughout this opinion to protect her privacy.

A-0688-24

status and reinstated plaintiff as PPR.  Since that time, the child has been enrolled in the Springfield public school system.

The parties continued to experience difficulty co-parenting.  The court appointed Dr. Mark Singer to perform a best-interests evaluation in March 2020.  Dr. Singer presented his recommendations in a report that is the subject of this appeal.

In April 2024, plaintiff moved for several forms of relief, including: modification of summer and school-year parenting time; defendant's contribution to child-related expenses; termination of the parenting coordinator (PC); and a request for the trial judge to interview the child.  Defendant opposed and cross-moved for financial contributions from plaintiff for transportation costs, increased travel responsibilities for plaintiff, "creat[ion of] a system of transportation," and to make-up parenting time.

On June 20, 2024, the judge denied without prejudice plaintiff's request to modify parenting time, to terminate the PC, and to interview the child.  The court denied without prejudice defendant's requests for financial contributions to transportation costs, creating a system of transportation, modification of other visitation conditions, and an award of make-up parenting time, referring those questions to the PC for resolution.

3

A-0688-24

In August, defendant again moved to compel plaintiff to assist with transportation of the child and award make-up parenting time. He argued the PC's recommendations on those issues had been ignored by plaintiff. Plaintiff filed opposition and cross-moved to renew her request for the judge to interview the child, to require defendant to engage in therapy for himself and with the child, and for attorney's fees. Following argument on September 27, 2024 via Zoom, the court denied all of defendant's requests in an oral decision and written order entered the same day.

Defendant appeals from the denial of his requests to modify transportation arrangements and award make-up time. He also raises issues not presented to the trial judge, such as gender bias, issues with Zoom connectivity, and an ethics complaint.

II.

We consider the questions before us under well-established standards. We "review the Family Part judge's findings in accordance with a deferential standard of review, recognizing the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "Thus, 'findings by the trial court are binding on appeal when supported by adequate, substantial,

4

credible evidence.'" Id. at 283 (quoting Cesare, 154 N.J. at 411-12) (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)).

Deference is also accorded to a trial judge's credibility determinations because the judge "hears the case, sees and observes the witnesses, [and] hears them testify," affording them "a better perspective than a reviewing court in evaluating the veracity of witnesses." Cesare, 154 N.J. at 412 (alterations in original) (first quoting Pascale v. Pascale, 113 N.J. 20, 33 (1988); and then quoting Gallo v. Gallo, 66 N.J. Super. 1, 5 (App. Div. 1961)).

If we conclude there is satisfactory evidentiary support for the judge's findings, our "task is complete and [we] should not disturb the result." Beck v. Beck, 86 N.J. 480, 496 (1981) (quoting State v. Johnson, 42 N.J. 146, 161-62 (1964)). We will "disturb the factual findings and legal conclusions of the trial judge [if] we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Rova Farms Resort, 65 N.J. at 484 (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)).

III.

Guided by these principles, we address each issue in turn.

A-0688-24

Transportation

Acknowledging transportation issues had previously been endorsed by Dr.
Singer and the PC, the judge ruled:

> I don't think [plaintiff] sharing the driving with you on
> your days . . . has anything to do with your [child]'s best
> interests. So, at this point, . . . your motion says that
> you want me to immediately follow [the PC's
> recommended] mode of transportation. I'm not aware
> of any, so I'm denying that[.]
>
> So at this point, let's keep it as it is. I understand
> [plaintiff is] in Springfield. I understand it takes more
> time for you. I understand, but at this point I'm not
> making a change. If, during the parent coordination
> process, you find it works for give[-]and[-]take for
> something else, but I would suggest at this point, if
> you've been doing it like this for six years, then you[]
> suggesting it's not in [the child]'s best interest is not
> going anywhere with me.

Defendant contends the judge erred by not enforcing or adopting

recommendations for shared responsibility in transporting the child. However,

the judge was not obligated to adopt Dr. Singer's or the PC's immediate

recommendations, as a trial court may assign weight to such report in light of

current circumstances. See Hand v. Hand, 391 N.J. Super. 102, 109-10 (App.

Div. 2007). The judge explained her reasons for giving the recommendations

limited weight and made independent findings concerning the child's best

interests.

6

We discern no error or abuse of discretion in the judge's findings, reasoning, or decision to maintain the status quo, subject to further participation in what she termed the "parent coordination process."

Make-Up Parenting Time

Defendant sought a total of three three-day weekends or nine make-up days. He contended plaintiff was at fault, intentionally alienating the child from him. He alleged, "it's clear it's just [plaintiff] is pitting [the child] against [him] saying these [negative] things [about him] that aren't true."

Plaintiff's counsel represented that on those occasions the child "didn't want to go, and it's not [plaintiff]'s fault." Counsel coupled this explanation with plaintiff's request for defendant to engage in therapy with the child. The judge stated, "I don't know that it's clear. It's your opinion, sir . . . . I'm ruling that at this point, when it's just your opinion, forcing [the child] to have more weekends with you . . . when [the child had] chosen not to, . . . I'm denying." In the accompanying order, the judge wrote, "[d]efendant's request to make-up parenting time for three weekends, as outlined in his certification, is denied without prejudice." (Emphasis in original).

A-0688-24

By declining to issue a ruling with prejudice and instead permitting the PC to interview the child—as further provided in the September 27 order—the judge steered a prudent course.

In consideration of the brief period of missed visitation time and indication in the record the parties are of limited financial means, we see no error in the judge first referring this issue for the PC's consideration before scheduling a plenary hearing.  See K.A.F. v. D.L.M., 437 N.J. Super. 123, 137-38 (App. Div. 2014).

Gender Bias, Zoom Connectivity, Ethics Complaint

We "decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest."  U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 483 (2012) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)).  Because these issues raised by plaintiff on appeal do not address the jurisdiction of the trial court or concern a matter of public interest, we decline to address them here.

In an argument raised for the first time on appeal, defendant argues "[t]he [t]ender [y]ears [d]octrine needs to be abolished as a rule."  Defendant claims,

without evidential support, that he was "forced into allowing [plaintiff to be designated] PPR at the time of signing of our MSA because of her gender." In explanation for not raising this assertion earlier, defendant states, "[t]his issue was not brought before the [c]ourt as it was not relevant to the issues being discussed at the time." We agree with defendant that the question of gender was not relevant to any issue presented or decided by the court on September 27. Nor do we see any indication the judge failed to uphold N.J.S.A. 9:2-4, which provides "[i]n any proceeding involving the custody of a minor child, the rights of both parents shall be equal . . . ."

Defendant asserts the Zoom platform malfunctioned and therefore it is unclear what was heard during the hearing. In support of this argument, defendant points to three portions of the transcript that "[s]how[] an interruption with the Zoom [m]eeting." Our review of the transcript at the designated points confirms the interruptions. However, in the first instance, the court promptly alerted defendant he had been momentarily disconnected. Defendant was swiftly reconnected and continued with his argument. In the second instance, the judge herself was muted, then unmuted. There was no loss of substantive dialogue. In the third instance, the judge was in the midst of issuing her reasoning on plaintiff's request for attorney's fees when she remarked, "-- oh,

my goodness, it happened again," referring to the disconnection. Service was restored, the judge apologized for the problem and continued with her evaluation of the pertinent factors, denying plaintiff's application. Defendant suffered no prejudice from this interruption.

We discern no issue regarding defendant's due process rights nor any merit to this argument.

In his brief, defendant contends "it was inappropriate for [plaintiff] to bring up [an] ethics complaint [he] filed against her from 6 years ago. I believe it was only done to discredit the legitimacy of my rights to enforcement." Defendant acknowledges, however, "[t]his issue was not directly addressed to the [c]ourt on September 27, 202[4] because of the interruptions." Our review of the record confirms no reference to an ethics complaint in the arguments advanced, nor in the judge's findings or conclusions. We mention this claim only because it references an argument included in defendant's case information statement on appeal, "malfunctioning [Z]oom meetings."

Except in cases of plain error or matters of jurisdiction or substantial public interest, the appellate court ordinarily will not "consider questions or issues not properly presented to the trial court when an opportunity for such a

presentation [was] available. . . ." Nieder, 62 N.J. at 234. No such exception applies here.

Having reviewed the record, we are satisfied the judge reasonably exercised her discretion, basing her factual findings and legal conclusions on substantial, reliable evidence.

Defendant's remaining arguments either concern issues not presented to the trial court or lack "sufficient merit to warrant discussion in a written opinion." R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-0688-24